UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____                │
│ DATE FILED: 9/16/21                  │
└─────────────────────────────────────┘
```

---

Linda F. Phelps, *as Administratrix of the Estate of John J. Grimes*,

                            Plaintiff,

                –v–

CBS Corporation f/k/a Viacom, Inc., *et al.*,

                            Defendants.

---

17-cv-8361 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

Decedent John Grimes and his domestic partner, Plaintiff Linda Phelps, filed two lawsuits in New York state court against two different groups of defendants, alleging that Mr. Grimes developed mesothelioma as a result of exposure to Defendants' asbestos-containing products while working as a coppersmith apprentice at the Brooklyn Navy Yard. Presently before the Court are Defendant Foster Wheeler LLC's four *Daubert* motions to exclude or limit expert testimony and Foster Wheeler's motion for summary judgment. For the following reasons, the Court GRANTS Foster Wheeler's motion for summary judgment. Because the Court need not resolve the *Daubert* motions to reach this conclusion, those motions are administratively denied.

## I. BACKGROUND

### A. Factual Background

John Grimes, now deceased, worked at the Brooklyn Navy Yard from October 1961 to January 1963 as an apprentice coppersmith. Dkt. No. 191-1 ¶¶ 1, 3. During that time, Grimes worked on a land-based shop and on warships. *Id.* ¶ 4. In his deposition, Grimes testified that he

believed he was exposed to asbestos while working in the shop and on warships.  *Id.* ¶ 5.  Some of these vessels were in dry-docks.  Dkt. No. 184 ¶ 15.

Grimes could only recall the name of one vessel—the USS Constellation.  *Id.* ¶ 16.  The parties dispute the extent to which the evidence supports that Grimes worked on ships other than the Constellation; in particular, whether he worked on the USS Roan.  *See* Dkt. No. 191-1 ¶ 28.  As to the Constellation, Grimes testified that he believed that it was "still being, more or less, built," Dkt. No. 184 ¶ 17, but his naval expert determined that "by the time [Grimes] arrived, the ship was essentially complete."  Dkt. No. 170-8, Woodruff Depo., at 83:12–13.  The vessel was commissioned on October 27, 1961.  Dkt. No. 191-1 ¶ 50.

Foster Wheeler has acknowledged that it manufactured the boilers aboard the Constellation.  Dkt. No. 184 ¶¶ 26, 33.  Grimes testified that he "observed other tradesmen working on pumps, valves, and work on and in boilers" aboard the Constellation.  Dkt. No. 191-1 ¶ 19.  He testified that "valves were being installed" and "some material was being placed on and around the boiler."  Dkt. No. 184 ¶ 30; *see also* Dkt. No. 170-11, Grimes Depo., at 165:15-22.  But he could not recall the material's purpose or composition, what type of worker was placing the material, or the specifications of the boilers.  Dkt. No. 84 ¶ 32.  The parties disagree as to whether the material that Grimes observed was an asbestos-containing product, whether Foster Wheeler required asbestos-containing products for its boilers, whether the boilers on the Constellation were installed with asbestos-containing pads, and whether Foster Wheeler boilers required external insulation.  Dkt. No. 191-1 ¶¶ 13, 16

### B. Procedural Background

Grimes and his domestic partner, Linda Phelps, commenced this action against Foster Wheeler and other Defendants in the Supreme Court of New York, County of New York, on

October 3, 2017.  Dkt. No. 184, ¶ 1; *see also* Dkt. No. 1-1.  This is one of two parallel actions

that Grimes filed in New York state court, both which relate to his alleged exposure to asbestos

and his subsequent development of mesothelioma.  *See id.*  In this action, Plaintiff alleges that

decedent was "exposed to Defendants' Asbestos Containing Products through being in close

proximity to other workers working with and/or manipulating the Defendants' Asbestos

Containing Products, including Foster Wheeler boilers, Crane valves, pumps and gaskets,

General Electric Turbines, and Westinghouse turbines, in the boiler rooms and engineering

spaces on various ships, including the U.S.S. Constellation and in various locations throughout

the Brooklyn Navy Yard."  Dkt. No. 56 ¶ 4.  Plaintiff asserts five causes of action: negligence,

breach of warranty, strict liability, negligent failure to warn, and wrongful death. *See generally*

Dkt. No. 56.

On October 30, 2017, Defendant Foster Wheeler LLC removed Plaintiff's state court

action, asserting two bases for this court's jurisdiction. First, it asserted jurisdiction under

"federal enclave jurisdiction."  Dkt. No. 1 ¶¶ 10–12; *see also United States v. Johnson*, 994 F.2d

980, 984 (2d Cir. 1993) (finding Brooklyn Navy Yard to be a federal enclave). And second,

Foster Wheeler asserted that in supplying the boilers, it was "acting under an officer or agency of

the United States within the meaning of 28 U.S.C. § 1442(a)(1)."  *See* Dkt. No. 1 ¶ 8.

Grimes died in December 2017, *see* Dkt. No. 48-1, leaving Plaintiff Linda Phelps, as

administratrix of Grimes's estate and the sole plaintiff in this action.  On October 12, 2018,

Foster Wheeler moved to stay the action pending the Supreme Court's decision in *Air & Liquid

Systems Corp., et al. v. DeVries*, 139 S. Ct. 986 (2019), which Plaintiff opposed.  Dkt. Nos. 41,

44.  This Court denied the motion on January 7, 2019, in "light of the disagreement as to whether

maritime law governs Plaintiffs' tort claims."  Dkt. No. 46.

On March 19, 2019, Plaintiff amended the Complaint.  Dkt. No. 56.  Co-defendant Crane Co. answered on April 2, 2019, Dkt. No. 59, bringing cross-claims against the other defendants, including Foster Wheeler.  Dkt. No. 30.  Expert discovery closed on December 6, 2019.  *See* Dkt. No. 78.  The Court subsequently granted Foster Wheeler's request to substitute an expert witness as the original witness planned to retire shortly.  Dkt. No. 83.  On March 18, 2020, Plaintiff notified the Court that her Naval Engineering Expert, Captain William Lowell, died, Dkt. No. 112, and on March 31, 2020, she substituted Captain Bruce Woodruff as her new naval expert, *see* Dkt. Nos. 116, 118.  The Court then twice extended the deadline for expert discovery to allow Foster Wheeler the opportunity to depose Captain Woodruff and supplement its disclosures.  Dkt. Nos. 118, 147.

On January 21, 2020, Defendant Crane Co. moved for summary judgment, Dkt. No. 95, and at the same time filed three *Daubert* motions to exclude the testimony of Plaintiff's expert witnesses Gary Crakes, Dkt. No. 99, Dr. David Zhang, Dkt. No. 102, and Steven Paskal, Dkt. No. 105.  The Court granted Crane Co.'s *Daubert* motions in part and denied in part, and denied Crane Co.'s motion for summary judgment, on November 30, 2020.  *Phelps v. CBS Corp.*, No. 17-cv-8361 (AJN), 2020 WL 7028954 (S.D.N.Y. 2020).

Foster Wheeler has now moved for summary judgment.  Dkt. No. 167.  It has also filed four *Daubert* motions to exclude the testimony of Plaintiff's expert witnesses Gary Crakes, Dkt. No. 149, Dr. David Zhang, Dkt. No. 164, Steven Paskal, Dkt. No. 152, and Captain Robert Woodruff, Dkt. No. 155.  The motions are fully briefed. See Dkt. Nos. 150, 153, 156, 165, 169, 174, 177, 179, 181, 185, 187, 188, 189, 190, 191.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is warranted where the admissible evidence and the pleadings "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). The moving party bears the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Id.* at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and it is "genuinely in dispute" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A moving party may satisfy its burden by demonstrating that the non-moving party, "after adequate time for discovery," has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013).

If the movant satisfies its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (internal quotation marks and citation omitted). That is, it must "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The Court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir. 1994).

## III. DISCUSSION

In its motion for summary judgment, Foster Wheeler first argues that maritime law applies to Plaintiff's claims.  The Supreme Court recently provided guidance on maritime torts in *Air & Liquid Sys. Corp. v. DeVries*, 139 S. Ct. 986 (2019).  Foster Wheeler argues that applying *DeVries*, it cannot be held liable for a failure to warn of the dangers of asbestos-containing products added to its boilers and that the Court must dismiss all claims against it.  The Court agrees.

### A. Maritime law is the proper choice of law for Plaintiff's claims.

 "The general maritime law has recognized the tort of negligence for more than a century." *DeVries*, 139 S. Ct. at 993.  To determine whether an alleged tort arises under maritime law, the Court looks to the two-part test articulated by the Supreme Court in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995).

The "location test" first considers whether "the tort occurred on navigable water or whether the injury suffered on land was caused by a vessel on navigable water." *Grubart*, 513 U.S. at 534.  If the location test is satisfied, the Court then considers the "connection test."  The court must "assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce," and "determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id.* (cleaned up).

The Constellation, where Grimes was allegedly exposed to asbestos while in proximity to Foster Wheeler boilers, was within "navigable waters" for purposes of the "location test."  Even if the vessel was drydocked during his work, it was in "navigable waters." *See Vasquez v. GMD Shipyard Corp.*, 582 F.3d 293, 299 (2d Cir. 2009).  And, although work on the uncompleted USS

Constellation was deemed outside of admiralty jurisdiction by another court in this district, *Pace v. Air & Liquid Sys. Corp.*, 171 F. Supp. 3d 254, 264 (S.D.N.Y. 2016), it is undisputed that it was complete by the time Grimes joined the Brooklyn Navy Yard.  *See* Dkt. No. 170-8 at 83:12-13; *see also* Dkt. No. 182-17, Woodruff Affidavit, at 4.  The location test is therefore met.

The Court also finds the "connection test" met.  The "general features of the type of incident involved" here is that a naval worker was injured during repair and/or maintenance to a completed vessel.  *See Grubart*, 513 U.S. at 534.  Such injury has a disruptive impact on maritime commerce.  *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 250 (2d Cir. 2014).  Second, the activity that gave rise to injury has a "substantial relationship to traditional maritime activity."  *Grubart*, 513 U.S. at 534.  Again, Grimes' alleged exposure to asbestos occurred within the boiler rooms on the USS Constellation while workers were making repairs.  This satisfies the connection test.

Plaintiff's arguments to the contrary are unavailing.  Plaintiff generally asserts that because the asbestos exposure "occurred in a coppersmith shop, on non-operative warships in the BNY drydocks, and throughout the shipyard itself," the activity is not sufficiently connected to maritime commerce.  Dkt. No. 181 at 14–15 & n. 8 (relying on *Mortimer v. A.O. Smith Corp.*, No. 2:13-04169-ER, 2014 WL 7652990, at *187 n.1 (E.D. Pa. Dec. 18, 2014)).  But the inquiry here is not Grimes's alleged asbestos exposure generally, but where he was exposed to asbestos in connection with Foster Wheeler boilers.  *See Mortimer*, 2014 WL 7652990, at *187 n.1.  The undisputed record establishes the asbestos exposure to Foster Wheeler boilers occurred aboard warships, not the land-based shop.  *See* Dkt. No. 182-17 at 7.[1]

---

[1] The parties agree that Grimes worked on the USS Constellation and that Foster Wheeler supplied the boilers for this vessel.  However, the parties disagree as to whether Grimes also worked on the USS Roan.  The Court addresses this dispute below.

In sum, the Court finds that maritime law applies to Plaintiff's claims against Foster Wheeler.

**B. Foster Wheeler is entitled to summary judgment.**

Plaintiff's Amended Complaint asserts liability against Foster Wheeler for failing to warn about the dangers of asbestos. *See generally* Dkt. No. 56. Foster Wheeler argues it is entitled to summary judgment because it had no duty to warn under *Air & Liquid Sys. Corp. v. DeVries*, Dkt. No. 169 at 12. The Court agrees. Before turning to the merits of Foster Wheeler's motion, however, the Court first determines what evidence is permissibly considered.

**1. The Schroppe and Johnson affidavits**

Foster Wheeler relies on two affidavits from Tom Schroppe and Richard Johnson, which explain the mechanics of the Foster Wheeler boilers aboard the USS Constellation. *See* Dkt. Nos. 170-33 (Schroppe Affidavit), 170-34 (Johnson Affidavit). Plaintiff urges the Court to reject the affidavits as untimely expert affidavits because neither Schroppe nor Johnson were disclosed as experts nor submitted an expert report. Dkt. No. 185 at 23–24. However, "it is 'axiomatic that a corporate representative may testify and submit affidavits based on knowledge gained from a review of corporate books and records' . . . or other documents [the representative] reviewed in his official capacity as corporate representative." *Pace*, 171 F. Supp. 3d at 272 (quoting *Harrison–Hoge Indus., Inc. v. Panther Martin S.R.L.*, No. 05 Civ. 2851 (JFB) (ETB), 2008 WL 905892, at *28 (E.D.N.Y. Mar. 31, 2008)). Schroppe and Johnson were included in Foster Wheeler's Rule 26 disclosures, work as consultants for Foster Wheeler, and reviewed the pertinent documents in that capacity. *See* Dkt. No. 190-2; Dkt. No. 170-33 at 1; Dkt. No. 170-34 at 1. Thus, this Court finds them competent to testify under Rule 56.

8

### 2. The USS Roan

For the first time on summary judgment, Plaintiff asserts that Grimes worked on the USS Roan and that there were Foster Wheeler boilers aboard the vessel.  *See* Dkt. No. 181 at 6. Defendant objects to this evidence because Plaintiff failed to identify the vessel during fact discovery, and in any event, it is overly speculative to conclude that Grimes worked aboard the USS Roan.  Dkt. No. 191 at 7 & n.5.

Although the vessel was belatedly identified in Captain Woodruff's report, *see* Dkt. No. 182-17 at 7, the Court will not consider evidence regarding the USS Roan.  Even assuming that Plaintiff has adduced sufficient evidence for a jury to find that Grimes worked on the USS Roan, Plaintiff proffers inadmissible evidence to establish that there were Foster Wheeler boilers aboard.  In particular, Plaintiff relies on a judicial opinion.  Dkt. No. 181 at 6, 22 n.16 (relying on *Osterhout v. Crane Co.*, No. 5:14-cv-208 (MAP/DEP), 2016 WL 10950439 (N.D.N.Y. Mar. 21, 2016)).  But a judicial opinion is not evidence and is hearsay.  *See E.D. ex rel V.D. v. Tuffarelli*, 692 F. Supp. 2d 347, 363 & n.7 (S.D.N.Y. 2010).  And "[o]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."  *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997).  Because Plaintiff cannot rely on the judicial opinion, she has failed to proffer sufficient evidence to create a genuine issue of material fact as to the USS Roan. *See Celotex Corp.*, 477 U.S. at 322–23.

Plaintiff asserts that Captain Woodruff has been unable to review the equipment list because the National Archives have been "closed for Covid-19" and presumes that Captain Woodruff may later supplement his opinion "once the National archives reopen as the Covid-19 pandemic allows."  Dkt. No 181 at 6, 22 n.16.  But she has not submitted a request to reopen discovery or detailed any efforts to retrieve the necessary documents from the National Archives

or elsewhere.  She appears to rely on the fact that the Archives were closed in June 2020 when Captain Woodruff authored his report but does not provide any information as to the Archives' accessibility over the past fourteen months or currently.  Moreover, "courts will not admit supplemental expert evidence following the close of discovery when it expounds a wholly new and complex approach designed to fill a significant and logical gap in the first report, as doing so would eviscerate the purpose of the expert disclosure rules."  *Advanced Analytics, Inc. v. Citigroup Glob. Mkts, Inc.*, 301 F.R.D. 31, 36 (S.D.N.Y. 2014) (cleaned up).

Accordingly, the Court will not consider evidence regarding Grimes' potential work and exposure to Foster Wheeler boilers aboard the USS Roan.

### 3. Foster Wheeler is entitled to summary judgment under *Air & Liquid Sys. Corp. v. DeVries*.

With the scope of permissible evidence resolved, the Court now turns to the merits of Foster Wheeler's motion.  As noted above, Plaintiff's Amended Complaint asserts liability against Foster Wheeler for failing to warn about the dangers of asbestos.  *See generally* Dkt. No. 56.  A manufacturer may be held liable for failing to warn about the hazards of third-party asbestos-containing products used with its equipment under maritime law.  *See DeVries*, 139 S. Ct. at 991.  To determine when a manufacturer has a duty to warn in the maritime tort context, the Supreme Court has delineated a three-part test.  A product manufacturer has a duty to warn when:

(i)     its product requires incorporation of a part,
(ii)    the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and
(iii)   the manufacturer has no reason to believe that the product's users will realize that danger.

*Id.*  For the foregoing reasons, the Court finds that there is no genuine dispute as to the fact that Foster Wheeler boilers aboard the USS Constellation did not *require* incorporation of asbestos-containing insulation and thus Foster Wheeler did not have a duty to warn.

> **a.  There is not a genuine dispute as to whether Foster Wheeler boilers aboard the USS Constellation required the incorporation of asbestos.**

The Supreme Court provided further guidance in *DeVries* for determining when a "product in effect requires the part in order for the integrated product to function as intended." Such is the case when: "(i) a manufacturer directs that the part be incorporated, (ii) a manufacturer itself makes the product with a part that the manufacturer knows will require replacement with a similar part; or (iii) a product would be useless without the part." *DeVries*, 139 S. Ct. at 995–96 (cleaned up).  The Court addresses each in turn.

First, there is no genuine dispute that Foster Wheeler did not *direct* the Navy to incorporate asbestos insulation with the boilers aboard the USS Constellation.  Plaintiff misstates the law when she claims that "Foster Wheeler must show that its failure to warn resulted from a discretionary decision by the Navy."  Dkt. No. 181 at 21.  The inquiry here is not whether Foster Wheeler *could* warn of dangers but rather whether it had a *duty* to warn.  *See DeVries*, 139 S. Ct. 993–94.  Even resolving all ambiguities in favor of Plaintiff, there is not a genuine dispute of material fact that Foster Wheeler built the boilers in accordance with military specifications.  *See* Dkt. No. 181 at 21–22.  Plaintiff provides no evidence that Foster Wheeler directed the use of asbestos (even assuming that the asbestos was indeed used on the USS Constellation) and thus fails to "make a showing sufficient to establish the existence of an element essential" to her case. *See Celotex Corp.*, 477 U.S. at 322–23.

In her attempt to defeat summary judgment, Plaintiff points to the fact that the Navy allowed manufacturers to include warning and caution labels.  *See* Dkt. No. 184 ¶ R.99.  But this

provides no information on whether Foster Wheeler directed the use of asbestos.  She also submits a Foster Wheeler Corporate Policy Letter in February of 1983 that "establish[ed] certain guidelines relating to the installation of asbestos products and the incorporation of asbestos-containing products in Foster Wheeler Equipment." Dkt. No. 183 ¶ 83 (citing Dkt. No. 182-20). Plaintiff argues that this demonstrates that Foster Wheeler "was directly involved in the design of their products and their policies regarding the specification of asbestos materials in its products." *Id.*  But as Defendant correctly notes, the letter states that Foster Wheeler would attempt to change any customer request to use asbestos before accepting a bid.  Dkt. No. 182-20. Ultimately, even in 1983, the product was manufactured according to the customer's specification.  Thus, this letter is insufficient to establish a genuine issue of material fact that Foster Wheeler directed the Navy to use asbestos-containing insulation.

Finally, Plaintiff states that "the Navy relied upon equipment suppliers/manufacturers to identify hazards associated with their products" Dkt. No. 182-14, Captain Lowell Report, at 8. Even assuming that Plaintiff may continue to rely on Captain Lowell's report, this statement does not establish a genuine dispute of material fact.  Even if the Navy relied upon manufacturers to "identify hazards," the inquiry again is whether Foster Wheeler *required* incorporation of asbestos.  Plaintiff offers no evidence as to this essential inquiry.

Second, Plaintiff has not proffered admissible evidence that Foster Wheeler supplied asbestos-containing insulation when it provided the boilers to the USS Constellation.  Indeed, there is no evidence that Foster Wheeler provided any insulation to the USS Constellation. Plaintiff argues that the "Repair Parts List" of the "FW Technical Manual for the 'D' type boilers present on the USS Constellation" contains "innumerable quantities of asbestos gaskets, packing and rope (twisted asbestos wicking)." Dkt. No. 183 ¶ 84.  But the manual also states that

"replacement material [are] to be in accordance with military specification."  Dkt. No. 170-31 at

12.  Thus, Plaintiff's objection does not raise a genuine issue of material fact.

Third, Plaintiff has not offered any admissible evidence that establishes Foster Wheeler

boilers would have been "useless without the [asbestos] part."  *See DeVries*, 139 S. Ct. at 995.

Plaintiff only relies on Captain Lowell's report to contend that "asbestos-containing insulation

used on, within and around Foster Wheeler boilers was a necessary component of boilers."  Dkt.

No. 181 at 23 (quoting Dkt. No. 182-14 at 15).  But Captain Lowell's report cites to no

admissible evidence on this purported fact and simply states that Captain Lowell would testify as

to this.  As Captain Lowell is no longer an expert in this case and Plaintiff presents no other

evidence (other than her misplaced reliance on the USS Roan), she fails to offer sufficient

evidence to create a genuine issue of material fact.  *See Celotex Corp.*, 477 U.S. at 322–23.

Thus, Plaintiff has failed to make a sufficient showing to establish that Foster Wheeler boilers

"require[d] incorporation" of asbestos, an essential element of establishing a duty to warn.  *Id.*;

*see also DeVries*, 139 S. Ct. at 995.

Because the Court finds there is no genuine dispute as to the first prong, it need not

address the remaining two prongs of *DeVries*.  Even if it did address those prongs, however, it

would find that they are not met because Plaintiff fails to make a sufficient showing on an

essential element of her case.  *See Celotex Corp.*, 477 U.S. at 322–23.  For the second prong of

*DeVries* (*"the manufacturer knows or has reason to know that the integrated product is likely to*

be dangerous for its intended uses," 139 S. Ct. at 995), Plaintiff argues that maintenance and

repair was an "intended use" of the boilers and thus Grimes' alleged exposure during this work is

"within the scope of the test."  Dkt. No. 181 at 16–17.  But even assuming this, Plaintiff offers no

evidence showing that Foster Wheeler knew or had reason to know *at the time* that the work was

unsafe. *See DeVries*, 139 S. Ct. at 995–96.  She simply contends that Grimes' work was unsafe. *See* Dkt. No. 181 at 17 n.10.  This does not establish that Foster Wheeler knew or should have known the danger at the time.

As to prong three of *DeVries* ("the manufacturer has no reason to believe that the product's users will realize that danger," 139 S. Ct. at 995), Plaintiff argues that the Navy did not implement safety precautions to mitigate the dangers of asbestos exposure.  Dkt. No. 181 at 18–19.  Accordingly, Foster Wheeler should have known that the BNY workers would be unaware of the dangers.  Dkt. No. 181 at 19.  Plaintiff again puts the cart before the horse and assumes simply because Foster Wheeler *could* have issued warning labels, it had a *duty* to.  She provides no evidence that Foster Wheeler had reason to believe that the Navy or BNY workers would not realize the danger of working with asbestos.  *See DeVries*, 139 S. Ct. at 996.[2]

In sum, Plaintiff has failed to make "a showing sufficient to establish the existence of an element essential" to her case—that Foster Wheeler had a duty to warn under maritime law.  *See Celotex Corp.*, 477 U.S. at 322–23; *DeVries*, 139 S. Ct. at 991–92.  The Court accordingly GRANTS Foster Wheeler's motion for summary judgment as to all claims because there is no theory of liability under which it could be held liable for the incorporation of third-party asbestos-containing products with its boilers.[3]

---

[2] Plaintiff's cursory mention of Foster Wheeler's "on-the-scene engineers" does not change this conclusion.  She provides no explanation for this assertion and her citation only supports Grimes' lack of a mask or respirator.  *See* Dkt. No. 181 at 19 (citing Dkt. No. 182-1 at 132:13-20; 199:4-9; 223:4-6; 333:19-334:14).

[3] Because the Court grants Foster Wheeler's motion for summary judgment on this basis, it need not address Defendant's two additional arguments: that Plaintiff cannot establish that allegedly working in proximity with Foster Wheeler boilers was a proximate cause of his alleged injuries, and that this court "must dismiss" Plaintiff's wrongful death cause of action because mesothelioma was not the cause of Grimes's death.

**IV. CONCLUSION**

For the reasons stated above, the Court GRANTS the motion for summary judgment in favor of Defendant Foster Wheeler.  Because the Court need not resolve the pending *Daubert* motions to reach this conclusion, those motions are administratively denied.

This resolves Dkt. Nos. 149, 152, 155, 164, 167.

SO ORDERED.


Dated:  September 16, 2021
           New York, New York

_____
            ALISON J. NATHAN
        United States District Judge